Strafford,
July 1, 1953. } No. 4204.      .

CHARLES DiPRIZIO

*v.*

BOSTON & MAINE RAILROAD.

WILLIAM T. LEIGHTON

*v.*

SAME.

*Cooper, Hall & Cooper* and *John M. Brant* (*Mr. Burt R. Cooper* orally), for the plaintiffs.

*Burns, Calderwood & Bryant* (*Mr. Bryant* orally), for the defendant.

Goodnow, J.   Tibbetts Road is a public highway running east and west which is intersected at approximately right angles by the single line track of the railroad's Conway branch which runs north and south.   The highway starts at Route 16, the White Mountain Highway, about five hundred feet easterly of the crossing. It is a dirt road fourteen to sixteen feet in width which follows a substantially straight course upgrade from Route 16 to the crossing, the grade for some distance immediately east of the crossing being a 9.6 one.   Just west of the crossing the road continues upgrade and curves to the south behind a steep banking.

The view to the south of a traveler approaching this crossing from the east is limited by a knoll situated south of the road and east of the track.   Detailed evidence of the view available, given by an engineer, indicates that at 83 feet from the track, the driver of a truck approaching the crossing from the east could see the track itself for a distance of 110 feet south of the crossing, the barrel of an engine nine feet above the track at 130 feet and the top of the smoke stack fourteen feet above the track at 150 feet.   Similarly at a point 50 feet from the crossing, he could see the track for 125 feet, the barrel for 170 feet and the stack

for 203 feet. When 40 feet distant, he could see the track for 130 feet, the barrel for 200 feet and the stack for 270 feet and at 30 feet, the track was visible for 145 feet, the barrel for 290 feet and the stack for 450 feet. The view toward the north is also obstructed, although to a lesser extent, by a growth of trees.

The motor vehicle involved in the collision was a ton and a half International truck, 1946 model, with platform body on which there was no load. The distance from the front bumper to the eye of the driver of the truck was about seven feet. The truck had dual rear wheels with chains and ice grips. It was equipped with hydraulic brakes and a booster, all in good mechanical condition. The truck traveling west had two occupants, DiPrizio, the owner, and his employee, Leighton. The latter was driving and DiPrizio was on the seat beside him.

Shortly before eleven o'clock in the morning the plaintiffs stopped at the intersection of Route 16 and Tibbetts Road. They had just traveled south from Union on Route 16, the course of which somewhat parallels the railroad track, and had observed no trains. Both knew that there was a north bound mail train which arrived in Union around eleven o'clock but neither of them knew whether it had passed Tibbetts Crossing. They also understood that a freight train came south at about the same time. DiPrizio had been over Tibbetts Road two or three times traveling from west to east and Leighton had been over it once in the same direction. They both knew of the crossing's location. While Tibbetts Road was icy and slippery, the truck was equipped for such travel and they decided to take that route to their destination. Traveling the entire distance in the third lowest of the four forward speeds with which the truck was equipped, the truck proceeded westerly from Route 16 to the crossing at about ten miles per hour. No other vehicles or persons were on the road. The day was clear and cold with good visibility. The left window of the cab was open twelve to fourteen inches and the right one fully so.

Both plaintiffs testified that as they approached the crossing they listened attentively for the sound of a whistle or bell but heard neither. Nor did either of them hear any noise of the train before the collision. At some distance before reaching the crossing, Leighton, who had been looking to his left and had neither heard nor seen a train, looked at the road ahead "thinking there might have been a car down around the curve" and then glanced to the right. He had started to look back to his left again but "before I

got back I was hit by the train." The train, which consisted of a Pacific type steam locomotive and five cars, was traveling north at a findable speed of fifty-five miles per hour. Several hundred feet before the crossing the engineer had shut off the power and the train was "drifting" in anticipation of its next stop at the Hayes station about one mile north of the Tibbetts Crossing. The left front of the truck collided with the extreme right front of the engine, marks evidencing the point of collision on the engine extending only a few inches in on the cowcatcher.

The defendant contends that there was no substantial evidence of failure to sound the whistle and bell of the train for the crossing. The testimony on this issue is in conflict. Direct evidence that the signals were given came from the engineer and fireman. On the other hand, both plaintiffs testified that as they approached the crossing they were aware of its location and the likelihood of a train's passage over it, that both windows of the truck cab were open, that they were listening intently for the sounds of whistle and bell and that they heard nothing. It is substantial and affirmative evidence of the defendant's failure to comply with its statutory duty. *Dahar* v. *Railroad*, 95 N. H. 464, 467; *Cyr* v. *Railroad*, 88 N. H. 278, 281. The failure of the plaintiffs to even hear the rumble of the train goes to the weight to be given to their testimony by a jury but does not nullify its substance as a matter of law.

The other argument in support of the nonsuits concerns contributory negligence. It is clear that the conduct of the plaintiff Leighton is determinative of this issue as to both plaintiffs since any negligence on his part as the driver, must be imputed to his employer and passenger, the plaintiff DiPrizio. *Freeman* v. *Scahill*, 92 N. H. 471. The defendant contends that the evidence conclusively establishes that Leighton was guilty of contributory negligence as a matter of law. Its position is chiefly based upon the proposition that Leighton looked to the left for the last time either at a point where the train was clearly visible and was negligent in not seeing it or at a point too distant from the crossing to reasonably disclose the approaching danger.

The distances and times involved in judging Leighton's conduct are both extremely short. During the last seconds preceding the accident, the defendant's train was traveling at a findable speed of fifty-five miles per hour and the truck in which the plaintiffs were riding at ten miles per hour. On the basis of these speeds maintained up to the moment of collision, when the front of the

truck was thirty feet from the crossing and Leighton's eyes were thirty-seven feet from it, two seconds before the collision, the train was 165 feet from the crossing and its barrel clearly visible to Leighton had he looked to his left at that point. It continued in clear view for the remaining distance to the crossing. On the other hand, two-thirds of a second sooner, when the front of the truck was forty feet from the crossing and Leighton's eyes forty-seven feet from it, a mere two and two-thirds seconds before the crash, the train was 219 feet south of the crossing. The top of its smoke stack, first visible mathematically from this point at about 223 feet south of the crossing, was observable upon careful scrutiny. Where the first useful view of the train could be secured between 47 and 37 feet from the crossing cannot be determined with precision.

If the evidence clearly showed that Leighton looked to his left at some point when the train was within reasonable view and failed to see it, his contributory negligence would be established. *Niemi* v. *Railroad*, 87 N. H. 1; *Gates* v. *Railroad*, 93 N. H. 179; *Bixby* v. *Railroad*, 94 N. H. 107. But the evidence that he did look at such a point is not conclusive. During cross-examination, Leighton testified that he last looked to his left and saw no train when the front of the truck was thirty feet from the crossing, a point at which the train was visible. This was an expression of his judgment as to the distance to which he is not bound. *O'Brien* v. *Public Service Co.*, 95 N. H. 79, 81. On other occasions in his testimony, it was qualified to "around thirty feet," "thirty feet I didn't measure it" and "about thirty feet." The distance was not one of which he took special note at the moment he shifted his gaze. Furthermore, in the light of the shortness of times and distances involved in this case, his testimony that he never saw the train is as indicative of his last look occurring at least two-thirds of a second sooner, when ten feet further from the crossing, as it is of his failure to observe the train upon looking when the front of his truck was exactly thirty feet from the crossing. The point at which he last looked to the left is not so clearly established by the evidence as to support our determination as a matter of law that he was negligent in failing to see the train during that look.

Nor does it follow, as urged by the defendants, that if the point at which he last looked to the left was too distant to disclose the approaching train, Leighton was negligent as a matter of law. "Our law does not adopt particular circumstances as the

measure of due care but rather holds the actor only to the standard of care of the average prudent person under all the circumstances." *Fissette* v. *Railroad,* 98 N. H. 136. The distance from a crossing which may be regarded as a reasonable one at which to look depends upon the circumstances of each case. The fact that the last observation is made from a point at which an approaching train cannot be seen may be some indication that it is not reasonable but is not conclusive of that issue.

When the front of the truck was 41 feet from the crossing, a look to the left by Leighton could not have disclosed a view of the approaching train. Had he looked one foot nearer the crossing, the train's stack would have just been appearing over the edge of the knoll. Whether it was at this point or at one closer to the crossing that the driver was first afforded a useful view of the train is one for the jury. The fact that such a view could be secured by the driver only while the front of his truck was somewhere within 40 feet of the crossing does not conclusively establish his fault in failing to look to his left during that short distance. *Cyr.* v. *Railroad,* 88 N. H. 278, 282. This was the first time he had approached the crossing from the east. There is nothing to indicate that he was sufficiently familiar with it to realize that an effective view to the left could be had only within such a limited distance of the crossing so as to charge him with negligence in not availing himself of it. We cannot say that if he had looked and listened and had neither seen the train nor heard any warning signals or noises from it up to the time when the front of the truck was 41 feet from the crossing, he would not then have been justified in assuming that no train was coming and in giving his attention for the next two and two-thirds seconds to the road ahead and to the possible approach of a train from his right.

Before reaching the crossing, Leighton and DiPrizio agreed that DiPrizio would look to the right for a train and Leighton would look to his left. A brief moment later, DiPrizio reported "my side is all right." The defendant contends that under these circumstances, with the duty of looking right delegated to DiPrizio, it was negligence on Leighton's part, as a matter of law, to also look to the right as he did in that period during which he might have looked left and seen the approaching train. The two directions in which Leighton looked other than to his left were points from which he had as much reason to expect danger as from his left. In spite of the agreement which the two plaintiffs had made

as to DiPrizio's looking to the right, Leighton was still responsible for any negligence on the part of DiPrizio in so looking. *Bixby* v. *Railroad*, 94 N. H. 107, 109. "The fact that more precaution on [the driver's] part would have prevented the accident does not necessarily defeat a recovery." *Fissette* v. *Railroad, supra.* While a jury might find that a driver approaching the crossing in question under these circumstances should have watched his left more diligently rather than glancing to his right, we cannot say that in so looking Leighton was negligent as a matter of law.

The defendant further claims that Leighton violated the statutory duty imposed upon him by R. L., c. 119, s. 18. This statute provides that upon approaching a grade crossing, the operator of a vehicle "shall reduce the speed of the vehicle to a reasonable and proper rate, and shall proceed cautiously over the crossing." For the five hundred feet from Route 16 to the crossing, Leighton operated the truck at ten miles per hour. If the operator of a vehicle travels for some distance toward a crossing at such a moderate though sustained speed as, at the crossing itself, would be "reasonable and proper," he is not required to further reduce his speed upon his immediate approach to the crossing. The duty imposed by the statute is not a reduction of speed, whatever it may have been, but an approach to the crossing at a "reasonable and proper rate." This rate is determined by the circumstances which were apparent or should have been apparent to the driver as he approached the crossing. The evidence does not conclusively establish that a speed of ten miles per hour was in excess of "a reasonable and proper rate." The statutory requirement that the driver "proceed cautiously over the crossing" imposes no more than a duty of due care. *Rowe* v. *Railroad*, 95 N. H. 371, 372. The defendant's claim of a violation of this part of the statute raises no issues not previously considered in this opinion.

The exceptions of the plaintiffs are sustained.

*New trial.*

All concurred.